IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HASAN SHAREEF, | ) | |
| | ) | Civil Action No. 18 – 1494 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| CAPTAIN MOORE, WARDEN | ) | |
| DEMORE, ASST. WARDEN | ) | ECF Nos. 96, 128, 131, 134, 170 |
| FEMALE, SGT. BLUMMING, | ) | |
| CAPTAIN ZENTS, SGT. WAGNER, | ) | |
| WARDEN SNEDDON, MICHAEL | ) | |
| SCUILLIO, JEFFREY KENGERSKI, | ) | |
| MARK BOWMAN, MAJOR | ) | |
| BATSTER, DA OFFICE, WILLIAM | ) | |
| FULLERTON, and OFFICER BRIAN | ) | |
| PALKO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Currently pending before the Court are Motions to Dismiss filed by the following Defendants: (1) Batster, Blumming, Bowman, DeMore, Female, Kengerski, Moore, Scuillio, Sneddon, Wagner and Zents (collectively "Butler County Prison Defendants") (ECF No. 96); (2) DA Office ("Butler County District Attorney's Office") (ECF No. 128); (3) Officer Brian Palko ("Officer Palko") (ECF No. 131); and (4) William Fullerton ("Judge Fullerton") (ECF No. 134). Additionally, Plaintiff has filed a Motion for Summary Judgment. (ECF No. 170.) For the following reasons, the Motions to Dismiss will be granted only to the extent they seek dismissal

1

for Plaintiff's failure to state a claim upon which relief may be granted; and Plaintiff's Motion for Summary Judgment will be denied.

A. **Standard of Review**

The United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also* Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir. 2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).

When considering *pro se* pleadings, a court must employ less stringent standards than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a pro se complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a § 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this

is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996).

### B. Discussion

Plaintiff's Amended Complaint is far from a model of clarity. That said, Plaintiff was given multiple opportunities to amend his complaint and provided with instructions on how to draft a proper complaint. *See* ECF Nos. 8, 20, 31, 48. Despite this, Plaintiff's attempts at amending over the course of an entire year were non-compliant, and, on October 3, 2019, the Court entered an order notifying the parties that it would proceed with the Amended Complaint that Plaintiff filed on March 12, 2019. *See* ECF No. 87. Notwithstanding the Amended Complaint's numerous pleading deficiencies, the Court is cognizant of Plaintiff's *pro se* status and the Supreme Court's instructions that *pro se* individuals must be accorded substantial deference and liberality. *See* Haines, 404 U.S. at 520. Therefore, to the extent that his allegations are discernable, the Court will construe them in a way that permits Plaintiff's claims to be considered within the proper legal framework. *See* Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004).

#### 1. Butler County Prison Defendants

Although Plaintiff does not identify the specific claims he is bringing against the Butler County Prison Defendants, the only thing that is clear from the Amended Complaint is that his claims (whatever they may be) are based on the Defendants' involvement in the confiscation of his property when he was processed into the Butler County Prison on August 20, 2018. Indeed,

Plaintiff states that they refused to give back his property, falsified official documents by saying that his property was contraband because it had "spice" on it, and then destroyed his property. As far as the Court can tell, it appears that this property may have consisted of legal work, jewelry and receipts.

Fortunately, in the early stages of this case Plaintiff filed a document that helps to clarify, and provide a bit of context, as to what occurred in the Butler County Prison on August 20, 2018. Said document is a response to Plaintiff's motion for return of property that his attorney, Armand R. Cingolani, III, Esq., filed on his behalf in his criminal cases on September 25, 2018. (ECF No. 5-2); *see also* Commonwealth v. Shareef, CP-10-CR-1714-2016 (Butler Cty. Ct. of Comm. Pleas); Commonwealth v. Shareef, CP-10-CR-592-2018 (Butler Cty. Ct. of Comm. Pleas). Although Plaintiff did not provide the Court with the actual motion for return of property itself, the response to the motion, which is dated November 20, 2018, indicates the following facts with respect to the confiscation of Plaintiff's property:[1]

> On August 14, 2018, immediately prior to [Plaintiff]'s move from the Allegheny County Jail to the [Butler County] Prison [("Prison")] six Prison employees were exposed to an unknown substance, resulting in those six employees being transferred to Butler Memorial Hospital for treatment. The Prison was placed on lockdown status pending an investigation. During the investigation, the unknown substance was discovered to be K2, a synthetic cannabinoid. While the exposure method remains unknown it is believed that this substance was infiltrated into the Prison via inmate mail or personal effects.
>
> On August 20, 2018, [Plaintiff] was transported to the Prison from the Allegheny County Jail. Captain Clyde Moore and Corrections Officer Mark Bowman processed [Plaintiff] into the facility and started to search his property. While searching [Plaintiff]'s property, both employees reported "they began to experience burning and irritated skin and burning eyes." These symptoms were

---

[1] The factual assertions made in the response to Plaintiff's motion are set forth herein only to the extent they provide context to and help clarify Plaintiff's claims since his allegations with respect to what happened in his Amended Complaint are virtually incomprehensible.

> similar to the symptoms the six prior employees experienced on August 14, 2018 when they were transported to Butler Memorial Hospital.
>
> Captain Clyde Moore sealed the property in a secure black garbage bag and placed the sealed property bag in his secure office for when [Plaintiff] would be released from the Prison. Captain Moore's and Correction Officer Bowman's symptoms subsided to where medical treatment was not required. At that time, Captain Moore explained to [Plaintiff] his property was deemed bio-hazard and to contact his attorney to send in any legal work to the facility. . . .
>
> On August 29, 2018 the Pennsylvania Department of Corrections ("DOC") placed the entire state prison system on an extended lockdown to combat the numerous number of DOC employees becoming sick while being exposed to an "unknown substance." Multiple policy changes were enacted for the DOC varying from inmate mail being sent off site and photocopied, legal mail opening practices, etc.
>
> During the week of September 16-20, Warden DeMore spoke with [Plaintiff] about his property. The Warden explained to [Plaintiff] that there were concerns his property was contaminated and was deemed bio-hazard but was stored on-site for when he was released from the Prison custody. Warden, Joe DeMore, reaffirmed that Captain Moore told [Plaintiff] to have his attorney send any pertinent legal mail to the facility. Warden DeMore explained in detail that the jail could have sent his bagged up property out to be tested for K2 which would result in all his property being deemed bio-hazard and consequently could be destroyed by the haz-mat team/testing agency. [Plaintiff] thanked Warden DeMore for not sending his property out to be tested and said he understood.
>
> A letter was sent to the Prison on October 3, 2018 from [Plaintiff]'s attorney, Armand Cingolani, regarding [Plaintiff]'s property. On October 4, 2018 at approximately 1155 hours, Deputy Warden Beau Sneddon ("D.W. Sneddon") spoke to Attorney Cingolani on the telephone about [Plaintiff]'s property. Attorney Cingolani indicated he was "under the impression [Plaintiff]'s property was destroyed or lost." D.W. Sneddon offered Attorney Cingolani the option of having [Plaintiff] sign a release of property form and that Attorney Cingolani could take possession of his client's property. Attorney Cingolani refused this option. . . .

(ECF No. 5-2, pp.1-3.) The docket sheets for Plaintiff's criminal cases indicate that Plaintiff's motion for return of his property was granted by the trial court on November 26, 2018, and while it is unknown what actually happened to Plaintiff's property, Plaintiff complained in his original Complaint (and his Amended Complaint) that his property was destroyed. Interestingly,

5

Plaintiff's original Complaint is dated prior to the aforementioned response to his motion wherein it was indicated by officials at the Butler County Prison that his property was not destroyed but rather being held pending his release since Plaintiff refused to execute an authorization for release of his property to his attorney or other designee. Notwithstanding this apparent discrepancy, for purposes of deciding the pending Motion to Dismiss for failure to state a claim, this Court must accept as true Plaintiff's allegation that his property was destroyed; but, even assuming that was the case,[2] Plaintiff has failed to state a claim upon which relief may be granted.

### a. Due Process

To the extent Plaintiff asserts liability on the part of the Butler County Prison Defendants for the alleged confiscation/destruction of his property as a result of its alleged contamination with K2, the United States Supreme Court has held that the concept of "due process" requires some kind of hearing before the state can deprive a person of a protected interest. Zinermon v. Burch, 494 U.S. 113, 126 (1990) (collecting cases). However, in cases of random and unauthorized deprivations of property, the State cannot predict when the loss will occur and, therefore, is unable to provide a meaningful hearing before the deprivation takes place. In Parratt v. Taylor, 451 U.S. 527 (1981), the Supreme Court determined that, with respect to negligent, random and unauthorized acts by state actors that result in the loss of a protected interest, a plaintiff does not suffer a violation of procedural due process if he or she has an adequate post-deprivation remedy. In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court extended the rule in Parratt to apply to intentional acts by state actors.

---

[2] Notably, Plaintiff does not state that Defendants failed to comply with the trial court's order granting the motion for return of his property.

The Third Circuit Court of Appeals has held that a prison's grievance procedure provides an adequate post-deprivation remedy, *see e.g.*, Tillman v. Lebanon County Corr. Fac., 121 F.3d 410, 422 (3d Cir. 2000), and that the existence of this post-deprivation remedy forecloses any due process claim, Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995), even if an inmate is dissatisfied with the result of the process. Iseley v. Horn, 1996 WL 510090, at *6 (E.D. Pa. 1996). In Monroe v. Beard, 536 F.3d 198 (3d Cir. 2008), which dealt with the intentional confiscation of inmate property pursuant to official prison policy, inmates objected to a Department of Corrections policy that allowed the confiscation of UCC-related material and forms, which inmates had used to file fraudulent liens and judgments against officials. The Third Circuit held that the failure to give the inmate prior notice of the seizure of these materials did not violate their due process rights. Id. at 210. It also found that the Department afforded the inmates a meaningful post-deprivation remedy in the form of the inmate grievance and a special process for objecting to the seizures. Id. The Court stated: "Although the plaintiffs allege that the defendants have not adhered to their own procedure, they have not shown that this post-deprivation procedure was not meaningful." Id. Likewise, in Tillman, the Third Circuit held that the plaintiff inmate had an adequate post-deprivation remedy in the form of the prison grievance program. 221 F.3d at 422.

Similarly, in this case, the Butler County Prison Defendants were not obligated to give Plaintiff prior notice of the seizure of his property. Plaintiff admits that he was notified why his property was confiscated (or destroyed), specifically because it was contaminated with "spice", and while he may disagree with that designation, he had a meaningful post-deprivation remedy with regard to the confiscation/destruction of his property through the Butler County Prison's administrative grievance procedure, and through which he admits he sought the return of his

7

property.  *See* ECF No. 15, p.3.  Plaintiff also had another meaningful post-deprivation remedy available to him through a tort action that he could have filed in state court.  *See* <u>Gilmore v. Jeffes</u>, 675 F.Supp. 219, 221 (M.D. Pa. 1987) (citing 42 Pa. C.S.A. § 8522(b)(3)).  Most importantly, however, Plaintiff was able to move in his criminal action for the return of his property and he fails to explain how this post-deprivation remedy was inadequate given that public records show that he was successful.  *See* <u>Revell v. Port Authority of New York, New Jersey</u>, 598 F.3d 128, 139 (3d Cir. 2010) ("[Plaintiff] has failed to explain why New Jersey's state procedures to recover wrongfully seized property, such as the ability to move in the criminal action for return of his property or the ability to file a separate action for a writ of replevin, are insufficient.").  Consequently, assuming Plaintiff had a protected interest in the items that were allegedly confiscated and/or destroyed, his allegations fail to state a claim for a procedural due process violation.

Additionally, Plaintiff's allegations also fail to state a claim for a substantive due process violation as the confiscation/destruction of his property simply does not shock this Court's conscience.  *See*, *e.g.*, <u>United Artists Theatre Circuit, Inc. v. Township of Warrington, Pa.</u>, 316 F.3d 392, 399-400 (3d Cir. 2003) ("our cases have repeatedly acknowledged that executive action violates substantive due process only when it shocks the conscience.").  *See also* <u>Moore v. Gluckstern</u>, 548 F. Supp. 165, 167 (D. Md. 1982) ("At worst, plaintiff alleges that the items were stolen by the guards.  While such action by prison guards, if proven, would clearly be wrongful, there is nothing about the alleged incidents that could conceivably 'shock[] the conscience' of the court.  Therefore, the complaint cannot be read as alleging a violation of substantive due process rights.").  Accordingly, Plaintiff's due process claims against the Butler County Prison Defendants stemming from the confiscation and/or destruction of his property will be dismissed.

### b. Access to Courts

Plaintiff also alleges that he "lost [his] trial" because of the confiscation and subsequent destruction of his legal work after he was processed into the Butler County Prison on August 20, 2018. *See* ECF No. 133, p.1. Plaintiff's legal work apparently consisted of legal research and "notes" to assist his lawyer. Id. at pp.1-2.

To establish a cognizable access-to-courts-claim, as it appears Plaintiff is attempting to do here, a prisoner must demonstrate that the denial of access caused him to suffer an actual injury. Lewis v. Casey, 518 U.S. 343, 351 (1996). An actual injury occurs when the prisoner is prevented from pursuing or has lost the opportunity to pursue a "nonfrivolous" and "arguable" claim. Christopher v. Harbury, 536 U.S. 403, 415 (2002). The prisoner must describe any such lost claims in his complaint. Id.

As an initial matter, Plaintiff fails to specify two important pieces of information. First, he does not identify the criminal case number for the trial that he "lost," and second, he does not specify what was contained within his legal research and notes that were confiscated and subsequently destroyed and why he believes this information would have lead to a different result for him at trial. Notwithstanding his failure to identify his criminal case number, the Court takes judicial notice of the public dockets of the Pennsylvania state courts, and specifically, the docket sheet for Commonwealth v. Shareef, CP-10-CR-1714-2016 (Butler Cty. Ct. of Comm. Pleas), which shows that Plaintiff was found guilty by a jury of one count of Possession of a Firearm Prohibited on October 22, 2018. This appears to be the criminal case which Plaintiff refers to since it was his only active criminal case at the time for which he was later found guilty.

Additionally, notwithstanding his failure to specify exactly what was contained in the legal research and/or notes that were allegedly destroyed, and why he believes that being without that information at trial lead to his conviction, Plaintiff cannot state an access-to-courts-claim because in this case his access to courts was satisfied as a matter of law by virtue of him being represented by counsel at his criminal trial. *See* Lamp v. Iowa, 122 F.3d 1100, 1106 (8th Cir.1997) ("For, once the State has provided a petitioner with an attorney in postconviction proceedings, it has provided him with the 'capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'") (quoting Lewis v. Casey, 518 U.S. 343, 356 (1996)); Schrier v. Halford, 60 F.3d 1309, 1313-1314 (8th Cir.1995) (having appointed counsel is one way in which state can shoulder its burden of assuring access to the courts); Annis v. Fayette County Jail, NO. CIV.A. 07–1628, 2008 WL 763735, at *1 (W.D. Pa. Mar 20, 2008); Sanders v. Rockland County Correctional Facility, No. 94 Civ. 3691, 1995 WL 479445, at *2 (S.D.N.Y. Aug.14, 1995) ("By the appointment of counsel, plaintiff was afforded meaningful access to the courts in his trial."); Williams v. Vaughn, No. 90-5617, 1991 WL 34429, at *4 (E.D. Pa. March 12, 1991) ("Thus, [plaintiff-inmate] Williams was not actually injured by any inability to gain access to the law library since he ultimately obtained representation.").

For example, in Rogers v. Thomas, No. 94-4692, 1995 WL 70548, at *2 (E.D. Pa. Feb. 17, 1995), *aff'd*, 65 F.3d 165 (3d Cir. 1995) (Table), the prisoner therein claimed a denial of access to courts as does Plaintiff herein. In Rogers, the prisoner's legal papers relating to the appeal of his criminal conviction were seized by a corrections officer. "The legal materials at issue consisted of 'legal research notes, court orders, affidavits, letters, and pleadings.'" Id. at *1. The plaintiff in Rogers was represented by counsel in his direct appeal, much like Plaintiff herein was represented by counsel in his criminal trial proceedings. The plaintiff in Rogers

10

claimed the confiscation of his legal papers violated his right to access to the court, and in rejecting this claim, the court held that despite the fact that the inmate's legal papers were taken by prison officials, "plaintiff was not denied access to the courts because he was represented by court-appointed counsel, during the entire pendency of the appeal to which the legal papers related. Thus, plaintiff was actually provided with, not denied, legal assistance." Id. at *2. This rule of law that providing prisoners with counsel fulfills their right of access to the courts makes eminent sense in light of Bounds v. Smith, 430 U.S. 817 (1977), one of the landmark cases in right of access jurisprudence, which declared that inmates' right of access to the courts may be satisfied by "providing prisoners with adequate law libraries **or** adequate assistance from persons trained in the law." Id. at 828 (emphasis added). Accordingly, as Plaintiff has not identified anything in the confiscated papers that would have changed the outcome of his trial, and as he had counsel for the criminal proceedings which he claims his alleged confiscated/destroyed legal research related, he fails to state a claim for denial of access to the courts as a matter of law.[3]

### 2. **Butler County District Attorney's Office**

The Court first notes that it is unclear whether Plaintiff intended the Butler County District Attorney's Office to be a named defendant in this action as it is not identified as a

---

[3] Even if Plaintiff would have refused court appointed counsel and would have chosen to proceed *pro se* in his criminal case, the fact that he had been offered legal assistance and refused such assistance would negate any claim of denial of access to the courts. *See*, *e.g.*, Degrate v. Godwin, 84 F.3d 768, 769 (5th Cir. 1996) (per curiam) (where pretrial detainee was offered state appointed counsel but he subsequently rejected such counsel in order to proceed *pro se*, state did not violate detainee's right of access to the courts by hindering his access to a law library; "having rejected the assistance of court-appointed counsel, [detainee] Degrate had no constitutional right to access a law library in preparing the *pro se* defense of his criminal trial."); Love v. Summit County, 776 F.2d 908, 914 (10th Cir. 1985), *cert*. *denied*, 479 U.S. 814 (1986) (state is entitled to choose whether it will meet its obligation to provide access to the courts by providing an adequate law library or by providing legal assistance in the form of an attorney).

defendant in Plaintiff's Amended Complaint. *See* ECF No. 15. Instead, it appears that Plaintiff named it as a defendant in his initial Complaint, *see* ECF No. 9, p.1, and for some reason it was not terminated from the docket upon Plaintiff's filing of the Amended Complaint. Indeed, in its Motion to Dismiss the Butler County District Attorney's Office states that it has "no rational connection to anything mentioned in the Amended Complaint" (ECF No. 129, p.3) and this Court agrees. Furthermore, a district attorney's office is not a "person" that can be sued within the meaning of § 1983. *See* Reitz v. County of Bucks, 125 F.3d 139, 148 (3d Cir. 1997) (affirming district court's grant of summary judgment in favor of defendant district attorney's office because it is not a legal entity for purposes of § 1983 liability). *See also* Lasko v. Leechburg Police Dep't, No. 12-1421, 2013 WL 2404145, at *4 (W.D. Pa. May 31, 2013) (dismissing with prejudice the claims against the District Attorney's Office because it is not a "person" for purposes of § 1983 liability). Therefore, Plaintiff's claims against the Butler County District Attorney's Office will be dismissed with prejudice.

### 3. **Officer Palko**

Although Plaintiff has put forth no coherent allegations against Officer Palko, he does use the term "false arrest" so the Court will assume that he believes that his arrest by Officer Palko on May 27, 2016 was unconstitutional. It appears, however, that such a claim is time-barred.

In determining the length of the limitations period, the court first looks to state law, and, under Pennsylvania law, the applicable limitations period for civil rights actions under 42 U.S.C. § 1983 is two years. *See* 42 Pa. C.S.A. § 5524. Next, the court looks to federal law to determine the time at which a § 1983 claim accrues, and, in Wallace v. Kato, 549 U.S. 384, 397 (2007), the United States Supreme Court held that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by

criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."

Here, Plaintiff states, and the docket sheet confirms that Plaintiff was arrested on May 27, 2016, and he appeared for his preliminary arraignment later that same day. *See* Commonwealth v. Shareef, MJ-50305-CR-338-2016. Since this occurred more than two years before he initiated the instant case, which at the earliest was on October 20, 2018, his claim is time-barred. Accordingly, Plaintiff's false arrest claim will be dismissed with prejudice.

### 4. Judge Fullerton

Plaintiff's claims against Judge Fullerton are unclear but it appears he complains that Judge Fullerton was not a "neutral" magistrate judge because he either did (or maybe did not) issue the warrant for Plaintiff's arrest. In this regard, the Court takes judicial notice that Judge Fullerton is a judge of Magisterial District Court 32-1-21, which is an entity of the Unified Judicial System of Pennsylvania. *See* 42 Pa. C.S.A. § 301(9).

As correctly noted by Judge Fullerton in his Motion to Dismiss, the Eleventh Amendment bars suit against him to the extent he is being sued in his official capacity as a magisterial district court judge for the Commonwealth of Pennsylvania. In this regard, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citation omitted). Here, a claim against Judge Fullerton in his official capacity is really a claim against the Magisterial District Court over which he presides; an entity of the Commonwealth of Pennsylvania that is entitled to Eleventh Amendment immunity. *See* PA. CONST. Art. V, §§ 1, 7; 42 Pa. C.S. § 1511. *See also*

Benn v. First Judicial Dist. of Pa., 426 F.3d 233 (3d Cir. 2005) (Holding that Pennsylvania's First Judicial District was "state entity" entitled to Eleventh Amendment immunity).

Eleventh Amendment immunity may be lost only in one of two ways: (1) if the Commonwealth waives its immunity; or (2) if Congress abrogates the States' immunity pursuant to a valid exercise of its power. *See* College Sav. Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 670 (1999); Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 240-4 (1985). Additionally, a person seeking purely prospective relief against state officials for ongoing violations of federal law may sue under the "legal fiction" of Ex parte Young, 209 U.S. 123, 159-60 (1908), despite the text of the Eleventh Amendment. Alden v. Maine, 527 U.S. 706, 757 (1999).

No exceptions to the Eleventh Amendment immunity are applicable here. By statute, the Commonwealth of Pennsylvania has specifically withheld its consent to be sued. *See* 42 Pa. C.S.A. § 8521(b); 1 Pa. C.S.A. § 2310; *see also* Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981). Additionally, Congress has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. *See, e.g.*, Will, 491 U.S. at 66 ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); Quern v. Jordan, 440 U.S. 332, 341 (1979); Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378 (M.D. Pa. 1995) (holding that States' immunity has not been abrogated for actions brought under §§ 1981, 1983, 1985, and 1986), *aff'd*, 91 F.3d 122 (3d Cir. 1996). Finally, Plaintiff does not seek prospective relief against Judge Fullerton, but compensatory damages instead. As such, Eleventh Amendment immunity bars any claim he may have against Judge Fullerton in his official capacity.

Additionally, Judge Fullerton is entitled to judicial immunity for all acts taken in his judicial capacity, Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir. 2000) (citing Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam)), "even if his exercise of authority is flawed by the commission of grave procedural errors," Stump v. Sparkman, 435 U.S. 349, 359 (1978). Indeed, such immunity can be overcome only where a judge's acts are nonjudicial in nature,[4] or where such acts, while judicial in nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Here, Plaintiff is seeking compensatory damages against Judge Fullerton and the allegations against him, to the extent they can be discerned, are directly connected to the actions he took as a magistrate judge and do not suggest that he was acting in the "clear absence of all jurisdiction." Therefore, judicial immunity applies to bar Plaintiff's claims.[5]

C. **Amendment of Complaint**

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir.

---

[4] "Factors which determine whether an act is a 'judicial act' 'relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectation of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'" Figueroa, 208 F.3d at 443 (quoting Stump, 435 U.S. at 362).

[5] Even though Plaintiff clearly states that he seeking compensatory damages against Judge Fullerton, it is worth noting that his claims would also be barred even if he were seeking prospective relief because he has not alleged that a declaratory decree was violated or that declaratory relief is unavailable. *See e.g.*, L.B. v. Town of Chester, 232 F.Supp.2d 227, 238 (S.D.N.Y. 2002); Kampfer v. Scullin, 989 F.Supp. 194, 201-202 (N.D.N.Y. 1997); *see also* Jung v. Pennsylvania, 2018 WL 3717213, at *4 (M.D. Pa. June 27, 2018); Steinberg v. Supreme Court of Pennsylvania, 2009 WL 1684663, at *22 (W.D. Pa. June 10, 2009).

15

2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile). While the Court is cognizant of these holdings, it finds that allowing for amendment by Plaintiff would be futile. A careful review of the record commands that Plaintiff, even garnering all the liberalities that accompany his *pro se* status, fails to state any claims under § 1983 against the Defendants for which relief may be granted. A separate order will issue.

Dated: March 25, 2020.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Lisa Pupo Lenihan
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge


Cc:　　Hasan Shareef
　　　　NU0779
　　　　SCI Forest
　　　　P.O. Box 945
　　　　Marienville, PA  16239

　　　　Counsel of record
　　　　(Via CM/ECF electronic mail)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HASAN SHAREEF, | ) | |
| | ) | Civil Action No. 18 – 1494 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| CAPTAIN MOORE, WARDEN DEMORE, ASST. WARDEN FEMALE, SGT. BLUMMING, CAPTAIN ZENTS, SGT. WAGNER, WARDEN SNEDDON, MICHAEL SCUILLIO, JEFFREY KENGERSKI, MARK BOWMAN, MAJOR BATSTER, DA OFFICE, WILLIAM FULLERTON, and OFFICER BRIAN PALKO, | ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, this 25th day of March, 2020,

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by the Butler County Prison Defendants (ECF No. 96) is granted in part and denied in part. The Motion is granted to the extent that it seeks dismissal for Plaintiff's failure to state a claim upon which relief may be granted and it is denied as moot in all other respects. The claims against these Defendants are dismissed with prejudice.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by the Butler County District Attorney's Office (ECF No. 128) is granted and the claims against this Defendant are dismissed with prejudice for Plaintiff's failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Officer Brian Palko (ECF No. 131) is granted and the false arrest claim against this Defendant is dismissed with prejudice for failure to state a claim upon which relief may be granted because it is time-barred.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Judge Fullerton (ECF No. 134) is granted and Plaintiff's claims against him are dismissed with prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 170) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

                                            Lisa Pupo Lenihan
                                            United States Magistrate Judge

Cc:    Hasan Shareef
         NU0779
         SCI Forest
         P.O. Box 945
         Marienville, PA 16239

         Counsel of record
         (Via CM/ECF electronic mail)